Mr. Tatum Your Honor, may it please the Court. I represent McDonald Transit in this matter, and this is an appeal from a district court's refusal to set aside a default judgment taken after McDonald Transit inadvertently failed to answer a complaint filed by Mr. Wooten. As soon as the mistake was discovered, and the record is very clear on this, McDonald Transit moved quickly, referred the case to my firm, and a motion to set aside that default judgment was filed within a week. The district court, I think, didn't follow this court's guidance when he considered that motion to set aside the default judgment. The court did not correctly apply Rules 60B and 55C, the two rules that allow a court to set aside a default judgment. These rules, as this court knows, because this court has actually written quite a bit on default judgments and the standards necessary to set them aside, they work in concert, these two rules, with different criteria, but the basic reason why a court can overturn a default judgment is if good cause is shown. The standard this court has to apply to the court below is an abuse of discretion, but this court has also held that even a slight abuse of discretion is sufficient in the context of a default judgment, because they are not favored. 60B1, Rule 60B1, permits a trial court to overturn a default judgment on certain grounds, mistake, inadvertence, surprise, or excusable neglect. Rule 60B6 fills in the blanks and uses different criteria, but 60B1, the good cause to overturn a default judgment under 60B1 is considered under a number of factors. Is there a public interest involved? Is there a significant financial loss to the party against whom the default is taken? Did the party against whom the default is taken have a meritorious defense? And did that party act expeditiously to get the court to correct the default? The court found, the district court in this case, found that McDonald Transit acted willfully, and I feel like that is actually where the court made the first mistake in considering this. The basis for the finding of willfulness was the fact that, or the allegation, and for the purposes of this argument we'll accept, that the McDonald Transit did, in fact, receive process at some point. The record shows that Mr. Bobbitt, who is the manager at McDonald Transit for whom these things should be delivered, testified with, excuse me, I've got a cold, testified that he was unaware that there had ever been a complaint filed and served on McDonald Transit, but for the purposes of this argument we'll assume that it was. And there is, in fact, a service return that a process server did file with the court, and that was filed with the trial court as part of the hearing of the motion to overturn. But service return, and this is where we sort of diverge, the parties diverge here, the service return, according to the jurisprudence of this circuit, isn't sufficient to rule out mistake or inadvertence. It does not, and it does not determine willfulness. And that is the basis, really, of the argument for the appellee. The actions post-judgment, which is another factor that this Court is entitled to consider and which a trial court should have considered, show that this party, McDonald Transit, acted very expeditiously once the fact of the default judgment had been communicated. Within a week, or two weeks, there was a motion to overturn. Another factor a court should consider in determining whether to overturn a default judgment or whether there were meritorious defenses presented. There were basically three defenses in the motion to set aside, any one of which, had it been proven at trial, would be sufficient to – for McDonald Transit to prevail in the trial of the case. Number one, McDonald Transit, it was asserted as, in support of the motion to overturn the default, that McDonald Transit was not appellee's employer. Now, this Court and the Court below did not need to make that finding. It was supported by affidavit testimony. But the fact is that that allegation, if proven at trial, and that's the standard that this Court has set, would be sufficient to provide a meritorious defense to the plaintiff's claim. Number two, Mr. Wooten was not issued a right to sue letter by the EEOC, another problem with Mr. Wooten's complaint. Number three, Mr. Wooten failed to sue the proper party. Any one of those, actually, if considered on the merits, would be sufficient to overturn Mr. Wooten's claim or to prevent Mr. Wooten from prevailing. How do you balance that with the district court found willful? The district court— When you have willful and then you might have some legitimate defenses that would have been available, how do you balance out which one controls? The court found willful, and whether you disagree or not, the district court said willful default, but then you're saying, but we had some good defenses. Well, how does the district court weigh which one counts more and which one should prevail? Well, Your Honor, those are two different factors, and they need to both be present in order for a default judgment to be overturned. Willfulness simply is a—I mean, I presume that it's— We were able to show that willfulness wasn't involved in this case basically because of the fact that we acted so expeditiously after the judgment had been entered. But at bottom, willfulness that I think this Court would require, the type of willfulness testimony or evidence would be, yes, I received this in the mail and I set it aside. I didn't think it was important. There's no evidence about what happened to the complaint once it arrived at McDonald Transit. You mean twice it arrived, right? That's correct. And there's no—well, the first time it was served on the wrong party. But anyway, it arrived twice, but there was no evidence about what happened to it. Well, the wrong party was the vice president. Did they just throw him in the trash? Well, no, the first party that the first complaint was served upon was an administrative assistant, I believe. It was signed for by— Rodin was the vice president. That's who the first one was served on, wasn't it? I believe the first one was served on an administrative assistant, Your Honor, but I'll check on that and address that in my five minutes if I may. But we're not really contesting that it actually arrived at McDonald Transit. But I think that simply isn't sufficient to be able to find willfulness, the fact that an answer wasn't filed. If there had been an email that was discovered that someone said, well, we received this and I dropped it in the trash can, obviously that's plenty of evidence for willfulness. The fact that an answer was not filed timely, though, by itself with nothing more, I contend, and I think we contend, and I think this Court's jurisprudence supports is not sufficient for a willfulness finding. Excuse me. I've got a cold. There's no evidence to the Court to show why there was no response filed once there was service. There is no evidence to show that. There's no evidence in the record because McDonald Transit is— they don't know what happened to it. There is an affidavit from the vice president who was in charge of this who said he never actually saw it or received it. So there is that evidence. There's also the evidence of return of service. But McDonald Transit really does not know what happened to the pleading once it entered the building. Otherwise, we would not be here. We'd be trying the case. But unfortunately, the record doesn't disclose what happened to it. The thing that you haven't mentioned yet, and I thought it was — would be a strong point on appeal, but you may not think so, the fact that the complaint is facially insufficient under the ADEA, but that the district court heard additional evidence or allegations at a hearing and incorporated those into the complaint and deemed it sufficient. That seems to me to be extraordinary, that a party would be able to rely on an insufficient complaint and then supplement it in a hearing. Your Honor anticipated where I was going. That is another factor that, in a default judgment situation, the pleading that's filed has to, by itself, support the claims made. In this case, this pleading simply did not. There was no adverse action alleged in the pleading. There is no causal link between an adverse action and a discriminatory animus alleged. There were no qualifications for the employee at the time of resignation that were alleged that qualified him for the job that he alleged that he was entitled to. And there's not even an allegation that the plaintiff was a member of a protected class. So ---- Did you object at the hearing to the fact that all of these additional allegations or maybe not all of them, at least some of them, were brought up in the hearing and the district judge entertained those and considered them? The record doesn't clearly disclose an objection, Your Honor, but there was, I think in pleadings filed with the trial court at the time, there was a ---- this was a basis for it, one of the bases for the claim. But I wasn't at the hearing and I can't ---- I don't have a record of it and I'm not ---- I can't represent to the Court that it was clearly articulated at the hearing. Was there no record made? There is a record made, yes. I believe we have a record of the hearing. It was a brief hearing. Excuse me. The rule provides for a hearing. What law is out there that tells us what can and cannot be presented at that hearing? Are there limits to what can be presented? But then what is the purpose of having such a hearing? Well, I think, to my way of thinking, and I think this Court's jurisprudence shows what can be presented at the hearing are matters germane to the question of willfulness and so forth. You're referring to the hearing to overcome or overturn the motion for ---- I mean, the hearing to overturn the default. It was presented. I think that the ---- he testified about more in more detail about the circumstances. Yes. And I guess the Court took those facts into consideration in interpreting the complaint. Can that be done at that hearing, I guess? Does the law authorize that, or what is the purpose of that hearing? Well, I think the law only authorizes evidence at a hearing to overturn a motion for ---- overturn a default judgment germane to the issues that this Court has held to be applicable. The Court recognized that the ---- that McDonnell Transit had followed certain of the factors that are important here. It acted expeditiously. It, you know, the Court expressed a couple of times that it was a ---- we appeared to have followed this Court's direction in how you get a default judgment overturned. Yet the Court ---- the basic error was the Court found that the receipt of the complaint by itself, because there was no other evidence about what happened to it after it got to McDonnell Transit, just the fact that it was served satisfied the willfulness criteria. That the fact that it ---- That's not your burden, though, to establish something that happened within the company that would have excused you from answering? That's correct, Your Honor. It is our burden, and we did the best we could with what we had, because the company doesn't know what happened to it. Obviously, if it did, we wouldn't be here. Let me try to understand that. There were two hearings. There was one where the plaintiff, without you present, presented the case to the Court for default. There was one where you were opposing the default. Correct. All right. At that one, did ---- was there anything presented about the substantive deficiencies in the plaintiff's case that Judge Smith referred to? I don't believe so, Your Honor. Is it a little late to complain about it now? That is a problem. Yes. All right. Thank you, Mr. Patain. Thank you. You save time for rebuttal. Mr. Johnston. May I please court, counsel? My name is Craig Johnston, and I represent the plaintiff, Eddie Wooten, in this appeal. I guess I'll start with the motion to set aside, and then I'll address any questions, or I'll address the issues concerning the complaint. The question in the Fifth Circuit on the rules regarding a motion to set aside are quite established now. I think the most recent case was the Enri Chinese Manufacturing Drywall case which has been held for . . . been proceeding for quite some time, but on January 28th, this Court again laid out the rules. Abuse of discretion by the district judges is the standard. The three factors to consider are, was there . . . did the default result from willful  That's one factor to consider. Prejudice to plaintiff and meritorious defense are the other factors. The Fifth Circuit is also quite clear in that, for a while, the law was unclear. Was it a balancing test, or how did you look at it? But the Fifth Circuit very clearly, and in a case that they cite, but also in the Chinese Manufacturing case, say that a finding of willfulness, a finding of willful conduct ends the inquiry. If the district judge finds that there was an intentional failure or willful failure by the defendant to file a response in pleading, no further inquiry is required. You can deny . . . the trial district court can deny the motion outright. Nothing can overcome that . . . Under the . . . . . . condition of willfulness? Yes, sir. That is correct. If there is a finding of willfulness, the district court does not need to balance the other factors. I got sidetracked in my brief on that issue a little bit, but in reading the case law and preparing for this argument, and reading the case that they cite, the Citel case, the Fifth Circuit is quite clear. If there is a finding of willfulness, the inquiry is over. So, if it's almost on the verge of bringing a frivolous lawsuit, and there's a judgment of millions of dollars, and there's just not anything to it because they willfully ignored it, there's no way to get around that? Well, you still have to support the judgment. In other words, the argument would now come to what Judge Smith was talking about, the complaint and the evidence. Does the complaint and the evidence support the judgment? It's like any other trial at that point. Does your complaint state a cause of action, and does the evidence support the complaint? And that's what you would be looking at at that point. So no, if there was not evidence to support the claims made in the complaint, then yes, that would be an issue. But as far as, you know, did they have a defense, of course, obviously, we claim that they don't. But the fact of the matter is, once that finding of willful conduct is made by the district court, district court can deny a motion to set aside without any further inquiry regarding those other factors, and the law in this circuit is real clear on that point. Am I correct that the court referred to it as knowingly and intentionally failed to answer? Yes, sir. Yes, sir. And I think the Fifth Circuit uses words like willful and intentional conduct when they describe it. Intentional and knowingly would constitute willful. The... All right. So let's assume, just for purposes of this discussion, that the district court was completely correct or at least not reversible on that finding of willfulness, and so you had this hearing. What do we do about the sufficiency or insufficiency of the complaint at the hearing? In other words, are you permitted to supplement the complaint at that point? That's what I have difficulty with if the complaint was inadequate. I also have difficulty with the fact that the defendant apparently didn't raise any objection to supplementing at the hearing, but I'd like you to go into that, if you would. Yes, sir. The issue on the complaint was a little bit convoluted or complicated at first, but if you think through it and work through it, it's pretty plain in this case. Your complaint is designed to give fair notice of the claim, and that's the only purpose of your complaint. Under the Rules of Civil Procedure, under Rule 8 of the Civil Procedure, you're required to give a clear and concise statement of your claim. Under the Supreme Court decision in Swierkiewicz v. Surema, and I cite as 122 Supreme Court 9... We know about that one. Okay. Yeah. We know which case that is. I'm going to refer to it as Surema because I cannot pronounce that first name, but under Surema, you know, it cites Rule 8 of the Federal Rules of Civil Procedure and says that you're just, that's all you're required to do is give a short statement of your claim showing that you're entitled to the relief. You're not required to set forth all of the factual allegations. The Supreme Court in that case very clearly says that that's what you do discovery for. That's what you do motions for a more definite statement if you want. All right, but there are certainly limitations to that. In other words, you couldn't file a complaint that just said I was employed there and they fired me and they're liable under the ADEA. That wouldn't be enough. Now, what you have to say something about, would you not, about the elements? Well, under the Surema case, the Supreme Court says you're not required to set out the prima facie case in the complaint. However, what you're supposed to do is, one, is give plaintiffs notice what your claim is, and two, the grounds upon which it rests. In a complaint in this case, and then you supplement, I mean, that's what the trial is for. I mean, the default hearing in this case is essentially the bench trial on this case. And so, of course, you're going to receive evidence at that bench trial to support the causes of action that you asserted in your complaint. And that's what happened here. In this case, our complaint very clearly on the first point says what the claim is. Paragraph 10, defendant violated the ADEA, which we identified as the Age Discrimination and Employment Act, by discriminating and retaliating against plaintiff on the basis of plaintiff's age after plaintiff made a claim of age discrimination. Okay, that's the claim. We're giving notice to the defendant of what your claim is, we're suing you under the Age Discrimination Act because you retaliated against Mr. Wooten after he filed a claim of age discrimination. And it goes on to state the grounds for the claim. On October 2010, in October 2010, plaintiff made a claim of age discrimination with the EEOC. After plaintiff made the claim and continuing until plaintiff's employment ended, defendant violated the ADEA by discriminating and retaliating against plaintiff and by creating a hostile work environment until plaintiff was constructively discharged on May 1, 2011. Such conduct caused plaintiff harm. So we've given them fair notice of what the claim is. We've also said what the circumstances are. It's not a complicated case that requires a whole lot of elaboration in the complaint. If you look at the, just even looking at some of the forms that the Federal Rules of Civil Procedure have for asserting a negligence case, I think form 11 in the Federal Rules says on blank date, defendant negligently drove a motor vehicle against plaintiff. You don't have to give all the details about how fast the defendant was going, did he run a red light or anything, you're giving them notice of what your claim is. For a conversion case, on blank date the defendant converted the defendant property owned by the plaintiff. That's what you have to allege. It's a plain and concise statement of what your claim is. In this case, our plain and concise statement was that we filed, or Mr. Wooten filed a EEOC complaint in October 2010. After that fact, and continuing until he was retaliated against and discriminated against and a hostile work environment was created against him. At the bench trial, which is the hearing on the default, evidence was received by the court on exactly what occurred. Now at that bench trial, I think the problem on a default, the issue would be not that the court received evidence because that's what they're supposed to do. I think the problem would be is if we asserted a new cause of action, or at the bench trial we asserted something that we hadn't given notice of in the original complaint. The case that the defendant relies on in their brief is this Nishimatsu construction case, which is a Fifth Circuit case from 1975. And I think it sort of explains, it's actually what cleared it up for me as I tried to work through these issues, but it sort of, if you look at it, it can sort of explain what the rule is. In that case, you had a, the court, the Fifth Circuit found that the complaint did not support the judgment. What happened in that case is you had a complaint, it was a breach of agreement claim against this defendant. The defendant defaulted, did not file an answer. In the complaint, it attached the agreement, the agreement in question to the complaint, incorporated it into the complaint. Well, the agreement itself showed that the defendant shouldn't have been, was not a responsible party to the agreement. In other words, the defendant was not, should not have been a party to the case. And which goes to what Judge Prado had stated earlier, and that is, you know, the complaint on its face showed, because the complaint incorporated the agreement and the agreement showed that the defendant was not the responsible party, the complaint did not support the judgment in that case. If we had a judgment in this particular case for a Title VII finding and had mental anguish and that sort of stuff, then our complaint, which was an ADEA complaint, would not support the judgment. But our complaint was an ADEA retaliation complaint. That's what we, that's what we alleged, that was the notice that we gave to the defendant. The evidence in the case that was heard by the trial court supported the ADEA retaliation claim at the hearing. Now, again, there was a hearing on the default judgment, which essentially, like I said, is a bench trial. I mean, that is, there's no defendant, but that is your trial in a case and you still have to have evidence to support the judgment, and that was done. There was not a hearing held on the motion to set aside the default judgment, just to clear up their questions on that. There was no objection raised in that motion concerning the fact that there was evidence, and I don't believe that there should have been, because, again, I think that's what the trial court does. You get your, you don't follow these, if you followed the logic that said all of the evidence had to be listed in your complaint, then you would never have a default, you could never get a default judgment unless you basically put in your complaint every fact, you would, that's what I would have to do as a plaintiff is put every fact. Sotomayor, I agree with you that we don't have fact pleading in the Federal system, but you are normally required to make some mention of the basic elements of the complaint. I understand, I mean, it's perfectly fair that you've quoted to us from the Federal forms, but the Supreme Court in some of the more recent Rule 8 and Rule 9 cases has been a little bit more specific about what needs to be alleged. Yes, sir, you're correct. In the Iqbal case and the other one, I think Iqbal was a very complex qualified immunity case against the Attorney General of the United States, and it's, you know, to state that case you had to allege sufficient facts to overcome the qualified immunity and basically show that you had a claim in something that wasn't established law. The other case, Twombly, which is the other Supreme Court case that addresses this issue, was an antitrust case where, again, you were required to set out the facts that showed that this particular case was actually an antitrust case. Our Age Discrimination and Employment Act Retaliation case is a much less complex case. It's a much simpler case, and you don't need to have a whole bunch of facts set out. I think the fact that in October 2010, he filed an age discrimination complaint with the EEOC and after that was discriminated and retaliated against and had a hostile work environment, which led to his constructive discharge, is fair notice of the basis of the claim. And so, I think the complaint is perfectly appropriate in this case to give the defendant notice of the complaint. On the willfulness, there's a couple of points I do want to make. It is the defendant's burden to prove up their motion to set aside the default judgment. They have the burden to show. In this particular case, the record shows that the defendant was served on two separate occasions. In July of 2012, the Postal Service, by certified mail, delivered the complaint to, well, it was aiming for Mr. Bobbitt, the President, but he didn't sign for it. Instead, the Vice President, Ms. Roden, is the one who signed for it. On their record in the trial court, which we obtained from the McDonnell Transit website, showed that Ms. Roden was a Vice President or Assistant Vice President of the corporation. She was an officer of the corporation. Under Rule 4H of the Rules of Civil Procedure, a corporation is served by delivering a summons and the complaint to an officer of the corporation. So in July of 2012, a summons and complaint was delivered to Ms. Roden, who was listed as an officer of the corporation. No answer was filed. Nothing was done with regard to that case. On January 17th, the summons and the complaint were delivered by a process server to the corporate office. The process server asked the receptionist, I need to see Mr. Robert Bobbitt. I have some legal papers for him. The secretary said, and this is in his affidavit in the record, the secretary said, I'll go get them for you. A minute later, a man comes in, says, are you Mr. Bobbitt? He says, yes, I am. I have some legal papers for you, and he served the person who identified himself as Mr. Bobbitt. After that, nothing happened. They want to talk, the defendant wants to talk about what happened after the judgment was entered, but from July of 2012 until June of 2013, nothing happened. They made no effort to appear or defend this case, and more importantly, they made no effort to explain, and this is where I think McDonnell Transit has a big problem, is they made no effort to explain what happened. There's only two possibilities, either with regard to Mr. Bobbitt, either he wasn't served by Mr. Bobbitt, which, but he was, I mean, he was, if he's telling the truth, he says I wasn't served. Well, somebody from his office certainly came up there and said he was Robert Bobbitt and accepted service on his behalf, and the defendant has an obligation at that point to explain what happened. They did not put forth any evidence to controvert this service, and I think they've admitted here this morning that they are accepting the fact that service was had. In their cases that they rely on in their brief, Jenkins and Gilchrest versus Goya, in that case, well, one is distinguished because the district court did not make a finding, and so the Court of Appeals remanded it for that finding to be made, but more importantly, they cited for the proposition that service by itself does not establish willfulness. I don't know that I disagree with that statement, but in Jenkins and Gilchrest, in the Lacey case which they cite, the same thing happened in all of these cases where a defendant is trying to show that, you know, it wasn't willful. The defendant put forth a lot of evidence explaining here's what happened. In Jenkins and Gilchrest, the defendant explained that she'd received a bundle of papers. She didn't know what they were. She sent them to her attorney. Her attorney was on vacation. When he came back, I mean, they explained what happened and then submitted affidavits detailing exactly what happened. In the Lacey, the defendant had said, I received a waiver of service the first time. I received another one. I thought it was also a waiver of service, so I didn't think I had an answer. His attorney was in constant contact with the plaintiff. Basically, the plaintiff in that case laid under the log and let the defendant believe that he wasn't going forward. In both of those cases, the defendants put forth a lot of effort, or some effort at least, explaining exactly what the details were to show that it wasn't willful. In this particular case, it's more akin to the Deerski v. Deerski case, which is 975 F. 2nd 181, where the district court found that the defendant simply chose to make a decision that it hadn't been served. I think the Fifth Circuit characterized it as sort of playing games with the service. I think that's what happened here. They come in and it's addressed to Mr. Bobbitt on the first time in July of 2012, and instead of him signing, just have my vice president, just have somebody else sign for it, and then we're not served. In the second time in January of 2013, when the process server comes in personally to the office to serve Mr. Bobbitt, Mr. Bobbitt just has somebody else accept service, and then we're not served. I'm not saying that's what happened in this case, but there's certainly an appearance of, because there's no explanation put forth by McDonald Transit as to what exactly transpired in this case, we're left to conclude, I mean, to just try to deduce what occurred. The simple fact is they have some burden to show that they did not act willfully, that they didn't just, oh, we got served, we're not going to file an answer, because that is willful and they can't do that, and that's what the evidence shows so far in this case. Based on that, I think, and just the arguments here and the record below, it certainly was not an abuse of discretion on the record in this case for the trial judge to find willfulness and therefore, in its inquiry, and to deny the motion to set aside a judgment, and again, the issue on the complaint, I think, gets sort of muddled when you look at the arguments made in this case, but the complaint gave fair notice of what the claims were. At the hearings that were held, there were two hearings? Well, there was one hearing on the motion to default. There was not actually a hearing held on the motion to set aside. The defendant, of course, was not present at the hearing. At the default hearing, no, sir. Yeah, not at all. And then, when did the defendant then receive any kind of notice about the result of the hearing? The hearing occurred and then the defendant received notice or learned about the judgment within a matter of days after the hearing, and I don't think anyone disputes that after they received notice of the judgment, they acted expeditiously, but that's not the issue. The issue is how to- You're talking about the June 7 hearing? Yes, sir. Yeah. And the defendants filed a motion to set aside on the 18th, so it's sometime between the 7th and the 18th of June that they got word? Yes, sir. The more immediate concern, that is correct, and there's no question that they filed their motion to set aside promptly after receiving notice of the- The problem is that from July until June, there's no record that they did anything or no explanation as to why they didn't do anything, which I think- Or from January when Babbitt got it. Personally, yes, sir. All right. Thank you, Mr. Johnston. All right. Thank you. Mr. Tatum, you saved time for rebuttal. On this question of a prima facie case, are you still contending that the host law case from this circuit doesn't establish qualification for the position as an element of a prima facie claim? Yes, Your Honor. Excuse me. Yes. You still contend that? Yes. You may not be familiar with it, but on February 21st of this year, Parker v. Cooper Tire & Rubber Company, our court said, quote, under this circuit's binding precedent, qualification for the position sought is an element of a prima facie ERISA claim, citing the host law case. That's correct, Your Honor. I'm not aware of that opinion, but I agree with- I mean, since I wrote host clause, I pay a lot of attention to that, but it seems to me that it's- I mean, this was a published- I'm sorry, it was an unpublished opinion, but it was in February of this year, reaffirming host clause. Yes, sir. Thank you. I do want to clarify, I wasn't involved in this case prior to the entry of the default judgment, and as counsel has pointed out to the court, there wasn't a hearing on the motion to set aside. It was on the pleadings. But the- when there is a situation in which no one knows what happened to a pleading after it's been received, the- I mean, the jurisprudence that receipt by itself isn't evidence of willfulness is specifically for those types of situations, because these things happen. There was no- no one- if, in fact, somebody could have testified that there was a pleading verified, or given affidavit testimony about what happened to the pleading once it got into the office, then we probably wouldn't be here. But if that is a fact that is not known, under this Court's jurisprudence, and under the sort of basic idea that default judgments are not to be favored, it shouldn't be something that's presumed without some indication of willfulness. There is evidence, and there was evidence before the Court, an affidavit of Mr. Babbitt, that he was not served with a summonser complaint on July 5th, and he wasn't served on January 17th. That's a fact, that's fact evidence, there's a fact issue, and that was raised in a timely manner. On the question of whether the sufficiency of the pleadings have to be preserved prior to appeal, by some sort of an objection, the Nishimatsu case, actually, from this Court in 1975, at page 6, this Court quoted Ohio Central Railroad Company versus Central Trust Company of New York, and said, or paraphrased, on appeal, the defendant, although he might not challenge the sufficiency of the evidence, is entitled to contest the sufficiency of the complaint and its allegations to support the judgment. That Nishimatsu was a case involving a default judgment and an attempt to overturn it. So it isn't necessarily, at least there is the argument to be made that this could be raised for the first time on appeal. Simply put, lack of evidence, lack of knowledge, given the disfavor with which this Court and other courts hold default judgments, shouldn't, and particularly in this circumstance, shouldn't be dispositive of the question of whether it was willfully ignored. It simply is inconsistent with this Court's jurisprudence. Thank you, Mr. Tate. Thank you. The case is under submission. Thank you. The last case for today, Liberty Mutual Insurance.